UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JEROME KNIGHT,

     Petitioner,          Civil No. 2:17-CV-11469
                              HONORABLE DENISE PAGE HOOD
v.                         CHIEF UNITED STATES DISTRICT JUDGE

JOHN DAVIDS,[1]

     Respondent.
_____/


**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING PETITIONER LEAVE TO APPEAL *IN FORMA PAUPERIS***

     Jerome L. Knight, ("Petitioner"), confined at the Ionia Correctional Facility in Ionia, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his convictions for first-degree premeditated murder, M.C.L.A. 750.316(1)(a), and possession of a firearm during the commission of a felony, M.C.L.A. 750.227b(1). For the reasons that follow, the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

_____

[1] The Court amends the caption to reflect the current warden of petitioner's incarceration.

# I. Background

Petitioner was convicted following a jury trial in the Wayne County Circuit Court, in which he was jointly tried with co-defendant Gregory Rice. This Court recites verbatim the relevant facts regarding petitioner's conviction from the Michigan Court of Appeals' opinion affirming his conviction, since they are presumed correct on habeas review. *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009):

> In these consolidated appeals, defendants' convictions arise from the November 24, 1998 shooting death of Yahnica Hill, who shared a child with defendant Knight. As further explained in section IV.A., *infra,* both defendants were originally convicted of the same offenses in 1999, but after a series of appeals, their convictions were vacated and they were retried in 2013.

> The prosecution presented evidence at trial to establish that by the spring of 1998, Hill and Knight's relationship had become "[v]ery shaky," due in part to custody disputes over their child, and that Hill obtained a personal protection order (PPO) against Knight. On or about September 5, 1998, Knight told Hill, after seeing her at a nightclub, that he "hate[d]" her and was "going to kill" her.

> Rodney Coleman, an acquaintance of Knight's, testified that in August or September 1998, Knight asked him if he would "do a girl for a G," which Coleman understood to mean murder a woman for $1,000. At the time, Coleman did not know whom Knight wanted killed; Coleman testified that he did not agree to kill anyone.

> Around October 13, 1998, Knight asked Coleman to bail defendant Rice, a mutual friend, out of jail. Coleman agreed to have Marlynda Mattison–Coleman, his then-girlfriend, bail Rice out of jail with money she obtained from Knight. Knight gave

Mattison–Coleman $700 for the bail, plus approximately $70 in additional fees that Rice needed to pay before his release. While Coleman, Mattison–Coleman, and Knight were en route to bail Rice out of jail, Knight revealed that Hill was the woman with whom he was "having issues" in regard to a custody dispute over their child and Coleman understood that Hill was the person Knight wanted to have killed.

By late-November 1998, Knight and Hill's relationship soured further. On or about November 22, 1998, Hill held a birthday party for their minor child and did not invite Knight; this upset Knight. The next day, November 23, 1998, Knight picked up the minor child from daycare without permission. Hill contacted the police, but by the time they responded to the complaint, they informed Hill that they would not do anything, either because Knight's visitation started early the next day and they did not want to disrupt the child, or because Knight's visitation had already started. Hill and some friends were outside of Knight's house at the time. According to Edward Petty, one of Hill's acquaintances, Knight later drove down the street and yelled, "I'll kill you, bitch" to Hill.

That same evening, at approximately 9:30 p.m., Knight left Hill a voicemail message in which he stated, "Na na na na na, bitch, you'll never see [your child] again, na na na na na na." Upon hearing the message, one of Hill's friends recommended that she contact the police.

The following morning, Hill's body was discovered with multiple gunshot wounds. Her body was a few feet from her automobile, which was still running. Her purse was inside the vehicle, undisturbed. Detroit Police Sergeant David Babcock testified that if this had been a carjacking or robbery, he would have expected to see the contents of Hill's purse strewn about the car.

Coleman testified that on the morning of Hill's murder, Rice came to his home. Rice told Coleman that "he did it" and that he "shot the girl in her face." According to Coleman, Rice flagged down "the woman" in the street to get her to pull her car over to

the side of the road. When she did, he waited until she turned her head toward the interior of the vehicle and shot her. Rice told Coleman that the shooting occurred on "the east side" of the city and that he shot the woman that night or earlier that morning. According to Coleman, Rice shot the woman "for money." Rice never named the woman whom he had shot, but Coleman "put two and two together" afterwards and began to believe that Rice had shot Hill at the bidding of Knight.

Coleman did not initially tell anyone what he had heard, including the police, but later told his aunt, Stephanie Harris, about what Rice had told him. Harris testified that Coleman told her the shooting was motivated by a custody dispute. Coleman also told Harris that Rice shot a woman on the "east side" while she was in an automobile that matched the description of Hill's automobile.

At trial, the prosecution's theory of the case was that Knight secured money to bail Rice out of jail and that, in exchange, Rice agreed to kill Hill. The jury convicted both defendants as indicated above.

*People v. Knight*, No. 320631, 2015 WL 5657382, at *1–2 (Mich. Ct. App. Sept. 24, 2015)(internal footnote omitted).

The conviction was affirmed. *Id., lv. den.* 499 Mich. 916, 877 N.W.2d 878 (2016).

Petitioner seeks a writ of habeas corpus on the following grounds:

I.  Mr. Knight's conviction for first degree murder should be reversed, and the charges ordered dismissed with prejudice, as the prosecution failed to present constitutionally sufficient evidence to prove Mr. Knight's identity as a perpetrator of the homicides.

II. The trial court reversibly erred in overruling Mr. Knight's objection to testimony from Stephanie Harris as to an alleged

prior consistent statement made to her by Rodney Coleman, as that evidence was inadmissible under MRE 801(d)(l)(b), and highly prejudicial to Mr. Knight as it improperly bolstered Mr. Coleman's testimonial credibility.

III. The trial court reversibly erred in barring the defense from presenting evidence of the allegations Ms. Hill[] made against Christopher Bennett when she obtained a personal protection order against him, where the court previously had ruled that Ms. Hill's allegations against Mr. Knight were admissible as relevant to her state of mind.

IV. The trial judge reversibly erred in overruling a defense objection to the reading of the prior recorded testimony of the medical examiner, as the prosecution failed to subpoena the witness and made an inadequate showing that this witness was unavailable under MRE 804(b)(l), and thus the use of the recorded testimony violated Mr. Knight's constitutional right to confrontation.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), imposes the following standard of

review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding.

A state court's decision is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002)(*per curiam*)).  "[A] state

court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  To obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103.  A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

Although the Michigan Court of Appeals reviewed and rejected a portion of petitioner's third and fourth claims under a plain error standard because petitioner failed to preserve a portion of these claims as a constitutional issue at the trial court level, the AEDPA deference applies to any underlying plain-error analysis of a procedurally defaulted claim. *See Stewart v. Trierweiler*, 867 F.3d 633, 638(6th Cir. 2017).[2]

---

[2] Respondent urges this Court deny portions of the third and fourth claims on the ground that they are procedurally defaulted because petitioner failed to object at trial.  Procedural default is not a jurisdictional bar to

## III. Discussion

### A. Claim # 1. The sufficiency of the evidence claim.

Petitioner argues that the prosecution presented insufficient evidence to establish his identity as the perpetrator. Petitioner also claims that there was insufficient evidence of premeditation and deliberation to support his conviction for first-degree premeditated murder.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the crucial question on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318

---

review of a habeas petition on the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. Petitioner's unpreserved claims are related to the preserved portions of his third and fourth claims. Because the same legal analysis applies to both the preserved and unpreserved portions of his third and fourth claims, it would be easier to simply address the merits of the unpreserved claims.

(1979).  A court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).

When considering a challenge to the sufficiency of the evidence to convict, the reviewing court must give circumstantial evidence the same weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993). "Circumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006)(internal quotation omitted); s*ee also Saxton v. Sheets*, 547 F.3d 597, 606 (6th Cir. 2008)("A conviction may be sustained based on nothing more than circumstantial evidence.").  Moreover, "[c]ircumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence." *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 100 (2003)(quoting *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500, 508 n.17 (1957)); *see also Holland v. United States*, 348 U.S. 121, 140 (1954)(circumstantial evidence is "intrinsically no different from

testimonial evidence," and "[i]f the jury is convinced beyond a reasonable doubt, we can require no more"); *Harrington,* 562 U.S. at 113 ("sufficient conventional circumstantial evidence" supported the verdict).

A federal habeas court cannot overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* For a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012). A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor

was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

The Michigan Court of Appeals rejected petitioner's sufficiency of evidence claim as follows:

> When considered as a whole and when viewed in a light most favorable to the prosecution, there was sufficient evidence for a rational jury to find that Rice committed Hill's murder and that Knight aided or abetted in the killing by procuring Rice's murder-for-hire services.
>
> The evidence demonstrated a contentious conflict between Knight and Hill regarding custody of their three-year-old son. The courts and police had intervened repeatedly. As early as September 1998, Knight publicly threatened to kill Hill. In August or September 1998, Knight offered Coleman $1,000 to kill a woman with whom he was having trouble in court, but Coleman declined. About a month later, Coleman learned about Knight's legal troubles with Hill. Given these facts, the jury could infer that Hill was the same person who Knight wanted to kill.
>
> The jury could also infer that, when Coleman declined to commit murder for Knight, Knight solicited another friend to do it, being Rice. In exchange for the murder, Knight spent over $700 to bail Rice out of jail. The jury could infer that Knight exhibited consciousness of guilt by sending Coleman and Mattison– Coleman to the jail with the bail money rather than connecting himself to Rice with authorities.

By the early morning hours of November 24, 1998, Knight's conflict with Hill had peaked. He was excluded from their son's birthday party on November 22, and left a voicemail threatening Hill that she would never see her son again. Contrary to their typical custody arrangement, Knight picked up their son from daycare on November 23, causing Hill to believe he had been kidnapped. When Hill went to Knight's house to find her son, Knight again threatened to kill her. He kept their son overnight. The jury could infer that, in the meantime, he sent Rice to kill Hill.

The evidence showed that Hill died on the morning of November 24, 1998 on the east side of Detroit, a few feet from her red Plymouth Sundance. The blood trail from the car indicated that she had been shot in the driver's seat and exited before falling to her death. Blood pooled on the back of Hill's head, causing Clifford Fuller, who discovered the body, and the responding officer to believe that Hill had been shot in the head.

According to Coleman and Mattison–Coleman, Rice arrived at their house on the west side the same morning of the murder. He was very distraught and confessed that he had just killed "the lady" for money. Rice explained that the murder occurred on the east side, that he waved at his target to stop her red Shadow or Sundance, and that he shot her in the head. Although Rice did not specifically identify Hill as the person whom he had shot, the jury could infer beyond a reasonable doubt that the time, place, and facts surrounding her murder coincided with Rice's confession.

In sum, we find, contrary to defendants' assertions, that the circumstantial evidence, when viewed in its entirety rather than in a piecemeal fashion, rises to the level of more than simple conjecture and instead was sufficient for a rational jury to find, beyond a reasonable doubt, that both defendants participated in the premeditated murder of Hill.

On appeal, defendants attempt to undercut their respective connections to the murder by challenging Coleman's credibility. As both defendants argue, Coleman did not cooperate with the

police until he was arrested for the crime. But evidence that Coleman disclosed the same information he provided to the police to Harris, even before his arrest, allowed the jury to find that he did not fabricate the allegations against defendants merely to avoid criminal punishment.

Rice also claims that Coleman was unbelievable because he testified that Rice said he shot Hill in the face, whereas Dr. John Scott Somerset, the assistant medical examiner for Wayne County, testified that she was shot in the hands and chest. Despite the medical examiner's testimony, Fuller and the responding officer both observed Hill's wounds and thought that she was shot in the head, just as defendant Rice reported to Coleman. Moreover, "it is for the jury to determine witness credibility[,]" *Harverson,* 291 Mich.App at 179, and this Court will not second-guess the jury's assessment of Coleman's testimony.

Knight also claims that Christopher Bennett, Hill's ex-boyfriend, likely killed Hill. The evidence demonstrated that Bennett's conflict with Hill—which had included physical violence and resulted in a PPO—ended approximately two years before Hill's death. Before her death, Bennett and Hill had reestablished their friendship, they spoke regularly, they went on a date, and Hill confided in Bennett about her problems with Knight. In contrast, Knight's conflict with Hill, including his threats against her life, continued to occur during the months and hours preceding her death. The prosecution was not required to negate every reasonable theory consistent with Knight's innocence, and here, the prosecution introduced evidence sufficient to convince a reasonable jury in the face of contradictory evidence introduced by Knight about Bennett. *People v. Fletcher,* 260 Mich.App 531, 560; 679 NW2d 127 (2004).

Knight further claims that the jury should not have concluded that the murder was premeditated, but instead was merely a death that occurred during the commission of a carjacking. The jury could infer premeditation from Knight's contentious relationship with Hill and prior threats to kill her, his solicitation of Coleman, and his efforts to bail Rice out of jail. *Unger,* 278

Mich.App at 229. Moreover, the fact that Hill's car and purse, which was in plain sight on the passenger's seat, were not stolen tended to prove that murder, not theft, was the perpetrator's primary purpose. See *Fletcher,* 260 Mich.App at 560.

*People v. Knight*, 2015 WL 5657382, at *3–5.

Under Michigan law, "[T]he identity of a defendant as the perpetrator of the crimes charged is an element of the offense and must be proved beyond a reasonable doubt." *Byrd v. Tessmer*, 82 F. App'x 147, 150 (6th Cir. 2003)(citing *People v. Turrell*, 25 Mich. App. 646, 181 N.W.2d 655, 656 (1970)).  Identity of a defendant can be inferred through circumstantial evidence. *See Dell v. Straub,* 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002). Eyewitness identification is not necessary to sustain a conviction. *See United States v. Brown,* 408 F.3d 1049, 1051 (8th Cir. 2005); *Dell v. Straub,* 194 F. Supp. 2d at 648.

To convict a defendant of first-degree murder in Michigan, the state must prove that a defendant's intentional killing of another was deliberated and premeditated. *See Scott v. Elo*, 302 F.3d 598, 602 (6th Cir. 2002) (citing *People v. Schollaert*, 194 Mich. App. 158; 486 N.W.2d 312, 318 (1992)).  The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. *See Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 596 (E.D. Mich. 2001)(citing *People v. Anderson*,

14

209 Mich. App. 527, 537; 531 N.W.2d 780 (1995)).  Premeditation may be

established through evidence of the following factors:

1. the prior relationship of the parties;
2. the defendant's actions before the killing;
3. the circumstances of the killing itself;
4. the defendant's conduct after the homicide.

*Cyars v. Hofbauer,* 383 F.3d 485, 491 (6th Cir. 2004); *Anderson*, 209
Mich. App. at 527.

Premeditation and deliberation may be inferred from the type of

weapon used and the location of the wounds inflicted. *See People v.*

*Berry*, 198 Mich. App. 123, 128; 497 N.W.2d 202 (1993).  Use of a lethal

weapon will support an inference of an intent to kill. *Johnson,* 159 F. Supp.

2d at 596 (citing *People v. Turner*, 62 Mich. App. 467, 470; 233 N.W.2d

617 (1975)).  Finally, premeditation and intent to kill may be inferred from

circumstantial evidence. *See DeLisle v. Rivers,* 161 F.3d 370, 389 (6th Cir.

1998).

To support a finding under Michigan law that a defendant aided and

abetted in the commission of a crime, the prosecutor must show that:

1. the crime charged was committed by the defendant or
   some other person;
2. the defendant performed acts or gave encouragement that
   assisted the commission of the crime; and
3. the defendant intended the commission of the crime or had
   knowledge that the principal intended its commission at the
   time he gave aid and encouragement.

*Riley v. Berghuis,* 481 F.3d 315, 322 (6th Cir. 2007)(citing *People v. Carines*, 460 Mich. 750, 757-58; 597 N.W.2d 130 (1999)).

In order to be convicted under Michigan law of first-degree premeditated murder under an aiding and abetting theory, the prosecutor is required to prove that at the time of the killing the defendant either had the premeditated and deliberate intent to kill the victim or that he participated knowing that the co-defendant possessed this specific intent. *Puckett v. Costello*, 111 F. App'x 379, 382 (6th Cir. 2004)(quoting *People v. Youngblood*, 165 Mich. App. 381, 418 N.W.2d 472, 475 (1988)).

In order to be guilty of aiding and abetting under Michigan law, the accused must take some conscious action designed to make the criminal venture succeed. *See Fuller v. Anderson,* 662 F.2d 420, 424 (6th Cir. 1981). Aiding and abetting describes all forms of assistance rendered to the perpetrator of the crime and comprehends all words or deeds which might support, encourage, or incite the commission of the crime. *People v. Turner*, 213 Mich. App. 558, 568; 540 N.W.2d 728 (1995).

To be convicted of aiding and abetting, the defendant must either possess the required intent to commit the crime or have participated while knowing that the principal had the requisite intent; such intent may be inferred from circumstantial evidence. *See Long v. Stovall,* 450 F. Supp. 2d 746, 753 (E.D. Mich. 2006); *People v. Wilson*, 196 Mich. App. 604, 614;

493 N.W.2d 471 (1992). The intent of an aider and abettor is satisfied by proof that he knew the principal's intent when he gave aid or assistance to the principal. *People v. McCray*, 210 Mich. App. 9, 14; 533 N.W.2d 359 (1995). An aider and abettor's state of mind may be inferred from all of the facts and circumstances, including close association between the defendant and the principal, the defendant's participation in the planning and execution of the crime, and evidence of flight after the crime. *Turner,* 213 Mich. App. at 568-69.

The Michigan Court of Appeals reasonably concluded that there was sufficient evidence presented to establish petitioner's identity as one of the perpetrators and that he acted with premeditation and deliberation when he aided and abetted in the victim's murder.

In the present case, there was sufficient evidence for a rational trier of fact to conclude that petitioner and Hill had a contentious relationship, that petitioner previously threatened to kill Hill numerous times, that petitioner threatened to kill Hill the day before she died, that petitioner solicitated Coleman to kill Hill, and when Coleman refused, petitioner acted with premeditation and deliberation when he provided money for Coleman to bail Rice out of jail in exchange for Rice killing Hill. Parneisha Jerry testified that two and a half months prior to Hill's murder, she and Hill

were out at a night club when petitioner pulled up in a Bronco and yelled

out the window to Hill, that he hated her and that he was going to kill her.

(ECF 6-5, PageID.476-479, 493-495). Edward Petty also testified that he

was present, on another occasion, when petitioner rode by in his Bronco,

rolled down his window, and said to Hill "I'll kill you, bitch." (ECF 6-7,

PageID.994-995).

Petitioner's prior threats to kill the victim was evidence to permit a

rational trier of fact to conclude that petitioner was the person who

assisted in the murder of the victim. *See Pinchon v. Myers*, 615 F.3d 631,

643-44 (6th Cir. 2010). Evidence that petitioner had prior disputes with the

victim supports a reasonable inference that the subsequent shooting was

premeditated. *Scott,* 302 F.3d at 603. Furthermore, other acts evidence

admitted under 404(b) evidence established that petitioner previously tried

to solicit Mr. Coleman to kill the victim, which is further evidence

establishing that petitioner planned the murder of Hill. *See Jamison v.*

*Collins*, 100 F. Supp. 2d 647, 707 (S.D. Ohio 2000), *aff'd*, 291 F.3d 380

(6th Cir. 2002), *as amended on denial of reh'g* (July 11, 2002). *See also*

*Belanger v. Stovall*, No. 07-CV-11336, 2009 WL 2390539, at *18 (E.D.

Mich. July 31, 2009)(evidence that petitioner solicited a friend to murder

the victim before her husband agreed to do so and that defendant

encouraged her husband to kill the victim supported a finding of premeditation and deliberation)).

Petitioner's animosity towards the victim, the fact that Rice provided information to Colman about the killing that only the perpetrator himself would have known, and that Coleman had previously been solicited to kill Hill by petitioner would permit a rational trier of fact to conclude that petitioner had planned and orchestrated with Rice the murder of Hill, so as to support his convictions. *See Saxton v. Sheets,* 547 F.3d 597, 606 (6th Cir. 2008). The fact that petitioner and his co-defendant acted in concert is further evidence of premeditation. *See e.g. People v. Jackson,* 292 Mich. App. 583, 589-90, 808 N.W.2d 541 (2011).

Because there were multiple pieces of evidence to establish petitioner's identity as one of the perpetrators of the homicide, the Michigan Court of Appeals did not unreasonably apply *Jackson v. Virginia* in rejecting petitioner's sufficiency of evidence claim. *See Moreland v. Bradshaw,* 699 F.3d 908, 919-21 (6th Cir. 2012).

A federal court's review on habeas is very deferential to the state courts regarding sufficiency of evidence claims. This Court cannot say that the Michigan Court of Appeals' rejection of petitioner's sufficiency of evidence claim resulted in a decision that was contrary to, or involved an

unreasonable application of *Jackson. Durr v. Mitchell,* 487 F.3d 423, 448
(6th Cir. 2007). "While there may have been other possible conclusions
that the jury could have drawn from the evidence, a determination of
premeditation 'beyond a reasonable doubt' does not require a jury to find
that the evidence eliminates every other reasonable theory except that
presented by the prosecution." *Titus v. Jackson*, 452 F. App'x 647, 650
(6th Cir. 2011).

Finally, to the extent that petitioner challenges the credibility of the
prosecution witnesses, he would not be entitled to relief. Attacks on
witness credibility are simply challenges to the quality of the prosecution's
evidence, and not to the sufficiency of the evidence. *Martin v. Mitchell,* 280
F.3d 594, 618 (6th Cir. 2002). An assessment of the credibility of
witnesses is generally beyond the scope of federal habeas review of
sufficiency of evidence claims. *Gall v. Parker*, 231 F.3d 265, 286 (6th Cir.
2000). The mere existence of sufficient evidence to convict therefore
defeats petitioner's claim. *Id.* Any insufficiency of evidence claim that rests
on an allegation of the witnesses' credibility, which is the province of the
finder of fact, does not entitle a habeas petitioner to relief. *See Tyler v.
Mitchell,* 416 F.3d 500, 505 (6th Cir. 2005). Petitioner is not entitled to
relief on his first claim.

**B. Claim # 2. The prior consistent statements claim.**

Petitioner next contends that the trial court erred in permitting the prosecutor to introduce Rodney Coleman's out of court statement made to Stephanie Harris to bolster Coleman's testimonial credibility.

The admission of a prior consistent statement when the declarant is available for cross-examination at trial, as was the case here, is not a question that rises to the level of a constitutional violation for purposes of habeas corpus relief. *See United States ex. rel. Gonzalez v. DeTella,* 918 F. Supp. 1214, 1222 (N.D. Ill. 1996)(internal citations omitted). Indeed, there is no violation of the Sixth Amendment's Confrontation Clause when the witness testifies at trial and is subject to unrestricted cross-examination. *United States v. Owens,* 484 U.S. 554, 560 (1988). As the Supreme Court has explained, "where the declarant is not absent, but is present to testify and to submit to cross examination, our cases, if anything, support the conclusion that the admission of his out of court statements does not create a confrontation clause problem." *California v. Green,* 390 U.S. 149, 162 (1970). In this situation, "the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements." *Owens,* 484 U.S. at 560 (internal citations omitted).

Mr. Coleman testified at trial and was subjected to cross-examination.  Ms. Harris also testified at petitioner's trial in conformance with Coleman's testimony.  (ECF 6-7, PageID.975).  Both Mr. Coleman and Ms. Harris were available for cross-examination and the jury observed their demeanor.

Because Harris and Coleman were subject to cross-examination at petitioner's trial, the admission of Coleman's out of court statement presented no Confrontation Clause violations. *Id.*  Moreover, there is "no Supreme Court decision holding that the improper use of a witness's prior consistent statements violates the Constitution." *Drain v. Woods*, 902 F. Supp. 2d 1006, 1037 (E.D. Mich. 2012); *aff'd,* 595 F. App'x 558, 561 (6th Cir. 2014).  Because the admission of the prior consistent statement did not deprive petitioner of a fundamentally fair trial, petitioner is not entitled to habeas relief on his second claim. *See Benton v. Booker,* 403 F. App'x 984, 986 (6th Cir. 2010).

### C.  Claim # 3.  The right to present a defense claim.

Petitioner alleges that the trial court erred in barring the defense from presenting evidence of the allegations Ms. Hill made against Christopher Bennett when she obtained a personal protection order against him, when

the court previously had ruled that Ms. Hill's allegations against Mr. Knight were admissible as relevant to her state of mind.

Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he also has the right to present his own witnesses to establish a defense. This right is a fundamental element of the due process of law. *Washington v. Texas*, 388 U.S. 14, 19 (1967); s*ee also Crane v. Kentucky,* 476 U.S. 683, 690 (1986)("whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense'")(internal citations omitted). However, an accused in a criminal case does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under the standard rules of evidence. *Montana v. Egelhoff*, 518 U.S. 37, 42 (1996). The Supreme Court, in fact, has indicated its "traditional reluctance to impose constitutional constraints on ordinary evidentiary rulings by state trial courts." *Crane,* 476 U.S. at 689. The Supreme Court gives trial court judges "wide latitude" to exclude evidence that is repetitive, marginally

relevant, or that poses a risk of harassment, prejudice, or confusion of the issues. *Id.* (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679 (1986)).

Under the standard of review for habeas cases as enunciated in § 2254(d)(1), it is not enough for a habeas petitioner to show that the state trial court's decision to exclude potentially helpful evidence to the defense was erroneous or incorrect. Instead, a habeas petitioner must show that the state trial court's decision to exclude the evidence was "an objectively unreasonable application of clearly established Supreme Court precedent." *See Rockwell v. Yukins,* 341 F.3d 507, 511-12 (6th Cir. 2003).

The Michigan Court of Appeals rejected petitioner's claim as follows:

> Next, Knight argues that the trial court abused its discretion and violated his constitutional right to present a defense by excluding from evidence the affidavit supporting a PPO that Hill obtained against Bennett several years before her death. The trial court admitted the PPO itself, but declined to admit Hill's affidavit in support of the PPO.

> Again, we review the trial court's decision to admit evidence for an abuse of discretion, and review de novo preliminary questions of law. *Chelmicki,* 305 Mich.App at 62. However, because Knight did not raise his constitutional claim in the trial court, that claim is unpreserved and our review is limited to plain error affecting Knight's substantial rights. *People v. Vandenberg,* 307 Mich.App 57, 61; 859 NW2d 229 (2014).

> A defendant enjoys the constitutional right to present a defense. US Const, Ams VI, XIV; Const 1963, art 1, § 20. "Although the right to present a defense is a fundamental element of due process, it is not an absolute right. The accused must still comply with 'established rules of procedure and evidence

designed to assure both fairness and reliability in the ascertainment of guilt and innocence.'" *People v. Hayes,* 421 Mich. 271, 279; 364 NW2d 635 (1984), quoting *Chambers v. Mississippi,* 410 U.S. 284, 302; 93 S Ct 1038; 35 L.Ed.2d 297 (1973). Due process does not confer the "unlimited right to admit all relevant evidence or cross-examine on any subject." *People v. Adamski,* 198 Mich.App 133, 138; 497 NW2d 546 (1993). Rather, a court has "'wide latitude ... to impose reasonable limits on ... cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *Id.* (citation omitted).

Knight argues the trial court should have admitted Hill's statements in the affidavit that accompanied the PPO obtained against Bennett. He contends that the statements were admissible as evidence of Hill's state of mind under MRE 803. He also argues, without citing the statements about which he complains, that the trial court's exclusion of the affidavit was directly contrary to its earlier ruling that allowed the prosecutor to admit evidence of Hill's state of mind in regard to various threats made by Knight in the days and months leading up to Hill's death.

> MRE 803(3) provides:
>
> A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

The rule permits admission of a declarant's then-existing state of mind, including statements of a future intent or plan to take certain actions. See *People v. Coy,* 258 Mich.App 1, 14; 669 NW2d 831 (2003). See also *People v. Moorer,* 262 Mich.App 64, 70–74; 683 NW2d 736 (2004). However, the rule precludes

the admission of hearsay statements to prove past events. *Id.* at 73–74. See also *Coy,* 258 Mich.App at 14; *People v. Hackney,* 183 Mich.App 516, 527 n 2; 455 NW2d 358 (1990) (a statement explaining a past sequence of events, from the standpoint of the declarant at the time of the statement, is a "statement of memory or belief" that is explicitly excluded from the exception).

> The exclusion of statements of memory or belief to prove the fact remembered or believed is necessary to avoid the virtual destruction of the hearsay rule which would otherwise result from allowing state of mind, provable by a hearsay statement, to serve as the basis for an inference of the happening of the event which produced the statement of mind. *Moorer*, 262 Mich.App at 73–74 (citation and quotation omitted).]

In *Moorer*, this Court explained that the victim's statements to others concerning a confrontation with the defendant, that the defendant wanted to kill the victim, that the defendant had threatened to kill the victim, that the defendant said he had a bullet for the victim, and that the defendant was looking for the victim with a gun did not fit within the parameters of MRE 803(3) because they related to past events and should have been excluded as statements of "memory or belief to prove the fact remembered or believed...." *Id.* at 73–74. In contrast, in *People v. Fisher*, 449 Mich. 441, 450; 537 NW2d 577 (1995), the victim discussed future plans to visit Germany and divorce the defendant upon her return. These statements were hearsay, but were admissible to demonstrate her then-existing plans. *Id.*

In this case, defendant Knight's offer of proof with regard to the affidavit reveals that the affidavit consisted entirely of Hill's hearsay statements pertaining to a past sequence of events— assaultive behavior by Bennett alleged from two years earlier. Similar to *Moorer* and *Hackney,* these statements do not fit within the purview of MRE 803(3). None of Hill's statements were about her plans for the future like the statements in *Fisher,* nor did they have anything to do with her then-existing state of mind. In fact, the only relevance of the statements to Knight, as

we glean from his argument, would have been to prove past events that Hill alleged in the PPO taken out against Bennett. This is not permissible under MRE 803(3). Knight cites no other exception to the hearsay rule under which Hill's statements in her affidavit could have been admissible. See *People v. Kevorkian,* 248 Mich.App 373, 389; 639 NW2d 291 (2001) (holding that failure to brief a question on appeal is tantamount to abandoning it). In addition, while Knight appears to argue that the trial court allowed the prosecution to admit statements similar to the ones it precluded him from admitting, he makes no effort to identify those statements. We will not search the record for facts to support Knight's assertion. See *id.*

*People v. Knight*, 2015 WL 5657382, at *6-8.

The United States Supreme Court "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005). State courts are the "ultimate expositors of state law." *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). What is essential to establish an element of a crime, like the question whether a given element is necessary, is a question of state law, of which federal habeas review is not available. *See Sanford v. Yukins*, 288 F.3d 855, 862 (6th Cir. 2002). Likewise, "[D]ue process does not require that a defendant be permitted to present any defense he chooses. Rather, states are allowed to define the elements of, and defenses to, state crimes." *See Lakin v. Stine,* 80 F. App'x 368, 373 (6th Cir.

2003)(citing *Apprendi v. New Jersey*, 530 U.S. 466, 484-87 (2000);

*McMillan v. Pennsylvania*, 477 U.S. 79, 84-86, (1986)).

Petitioner is not entitled to habeas relief because the Michigan Court of Appeals concluded that under Michigan law, the evidence was not admissible under M.R.E. 803(3). "States have great latitude in criminal proceedings, including latitude to formulate both the elements of crimes and the defenses to them." *Taylor v. Withrow,* 288 F.3d 846, 853 (6th Cir. 2002). Because the evidence in question was inadmissible, the Michigan Court of Appeals reasonably found that petitioner was not precluded from presenting a defense. The Court rejects Petitioner's third claim.

### D.  Claim # 4.  The Confrontation Clause.

Petitioner alleges that he was denied his right to confrontation when Medical Examiner Dr. John Somerset's preliminary examination testimony was read into the record.

Out of court statements that are testimonial in nature are barred by the Sixth Amendment Confrontation Clause unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness, regardless of whether such statements are deemed reliable by the court. *See Crawford v. Washington,* 541 U.S. 36 (2004). Although an exception to the confrontation requirement exists where a

witness is unavailable and gave testimony at previous judicial proceedings against the same defendant which was subject to cross-examination, this exception is inapplicable "unless the prosecutorial authorities have made a good-faith effort to obtain his presence at trial." *Barber v. Page*, 390 U.S. 719, 724-25 (1968); *see also Hamilton v. Morgan*, 474 F.3d 854, 858 (6th Cir. 2007).

When prosecutors seek to admit a non-testifying witness' preliminary hearing testimony, the Confrontation Clause requires two things: first, the prosecution must establish that the declarant is "unavailable" by showing that prosecutorial authorities made a good-faith effort to obtain the declarant's presence at trial, and, second, to satisfy the "indicia of reliability" requirement, the prosecution must demonstrate that the defendant had an adequate opportunity to cross-examine the declarant at the preliminary examination. *See Pillette v. Berghuis,* 630 F. Supp. 2d 791, 804 (E.D. Mich. 2009); *rev'd on other grds,* 408 F. App'x 873 (6th Cir. 2010); *cert. den.* 132 S. Ct. 125 (2011)(citing *McCandless v. Vaughn*, 172 F.3d 255, 265 (3rd Cir. 1999)).  The lengths to which the prosecution must go to produce a witness, such that the admission of the witness' prior, confronted testimony at the subsequent trial does not violate the Confrontation Clause, is a question of reasonableness. *Hardy v. Cross,*

565 U.S. 65, 70 (2011)(quoting *Ohio v. Roberts*, 448 U.S. 56, 74 (1980)).

The Supreme Court noted that "when a witness disappears before trial, it

is always possible to think of additional steps that the prosecution might

have taken to secure the witness' presence, but the Sixth Amendment

does not require the prosecution to exhaust every avenue of inquiry, no

matter how unpromising." *Id.*, at 71-72.  Most importantly, "the deferential

standard of review set out in 28 U.S.C. § 2254(d) does not permit a federal

court to overturn a state court's decision on the question of unavailability

merely because the federal court identifies additional steps that might

have been taken." *Id.* at 72.

The trial court and the Michigan Court of Appeals reasonably

rejected petitioner's Confrontation Clause claim.  When the prosecution

claims that a witness is unavailable for health reasons, a trial court must

make a case-specific finding of necessity before the admission of that

witness' prior testimony in *lieu* of live testimony will satisfy the

Confrontation Clause. *See Stoner v. Sowders,* 997 F.2d 209, 212 (6th Cir.

1993)(citing *Maryland v. Craig*, 497 U.S. 836, 855 (1990)).  The inquiry

"must focus on both the severity and duration of the illness.  The trial court

must inquire as to the specific symptoms of the illness to determine what

tasks the patient is able to perform, and the court must determine whether

there is the probability that the illness will last long enough 'so that, with proper regard to the importance of the testimony, the trial cannot be postponed.'" *Id.* at 212-13 (quoting *Burns v. Clusen*, 798 F.2d 931, 937-38 (7th Cir. 1986)).

The trial court properly found that the medical examiner was unavailable to testify, in light of the fact that the medical examiner was 70 years old, residing in Ohio, and was scheduled to have a medical procedure which would conflict with giving testimony at petitioner's trial. (ECF 6-6, PageID.626). Furthermore, neither defense attorney challenged the prosecutor's diligence in securing Dr. Somerset as a witness, and only objected on grounds that the defendants were previously represented by inadequate counsel which they claimed did not protect their client's rights. (*Id.* at 627-631). The trial court did not err by finding Dr. Somerset was unavailable prior to admitting his Preliminary Examination testimony. *See United States v. Bruce,* 142 F.3d 437 (Table); 1998 WL 165144, p. 5-6 (6th Cir. Mar. 31, 1998)(district court did not err in admitting witness' videotaped deposition at criminal trial pursuant to F.R.E. 804(a)(4), where the witness had undergone abdominal surgery eleven days prior to trial and doctor indicated in note that witness would not be able to tolerate automobile ride to court due to post-surgical discomfort); *see also Ecker v.*

*Scott,* 69 F.3d 69, 73 (5th Cir. 1995)(robbery victim suffering from bone cancer and hip fracture was "unavailable" to testify at petitioner's second prosecution, and admitting her prior testimony did not violate Confrontation Clause, even though petitioner claimed that victim might have been able to testify in four weeks).

Under the AEDPA's deferential standard of review, this Court concludes that the Michigan Court of Appeals' rejection of petitioner's claim was a reasonable determination, precluding habeas relief.

The second prong for admission of the victim's preliminary examination testimony was also satisfied because petitioner had an opportunity to cross-examine the victim at the preliminary examination.

Petitioner is not entitled to habeas relief in the absence of any Supreme Court precedent to support his argument that his opportunity to cross-examine the victim at his own preliminary hearing was inadequate to satisfy the requirements of the Confrontation Clause. *See Williams v. Bauman,* 759 F.3d 630, 635-36 (6th Cir. 2014). Although "there is some question whether a preliminary hearing necessarily offers an adequate prior opportunity for cross-examination for Confrontation Clause purposes[.]," *see Al–Timimi v. Jackson*, 379 F. App'x 435, 437 (6th Cir. 2010), *see also Vasquez v. Jones*, 496 F.3d 564, 577 (6th Cir.

2007)(doubting whether "the opportunity to question a witness at a preliminary examination hearing satisfies the pre-*Crawford* understanding of the Confrontation Clause's guarantee of an opportunity for effective cross-examination")(internal quotation marks omitted), the Sixth Circuit in *Al-Timini* noted that the Supreme Court in *Barber* indicated that "there may be some justification for holding that the opportunity for cross-examination of a witness at a preliminary hearing satisfies the demand of the confrontation clause where the witness is shown to be actually unavailable." *Al-Timini*, 379 F. App'x at 438 (quoting *Barber*, 390 U.S. at 725-26). The Sixth Circuit in *Al-Timini* also noted that the Supreme Court appeared "to have retreated from the doubts it expressed in *Barber* by finding that the opportunity for cross-examination afforded at a preliminary examination may satisfy the Confrontation Clause in at least some circumstances." *Id.* The Sixth Circuit in *Al-Timini* observed that the Supreme Court in the cases of *California v. Green,* 399 U.S. 149 (1970) and *Ohio v. Roberts,* 448 U.S. 56 (1980) had found no Confrontation Clause violation by the admission of an unavailable witness' preliminary examination testimony because the defendants in both cases had the opportunity to cross-examine the witness at the preliminary examination. *Al-Timini*, 379 F. App'x at 438-39. At the preliminary hearing in this case,

petitioner was represented by counsel, who was given a full opportunity to cross-examine the medical examiner, without any restriction by the examining magistrate, and who took advantage of this opportunity to the extent that he saw fit. Accordingly, the trial judge's decision to admit the medical examiner's testimony from the preliminary examination when the medical examiner was unavailable to testify was not contrary to, or an unreasonable application of clearly established federal law. *Williams,* 759 F.3d at 635-36; *Al-Timini*, 379 F. App'x at 439. Petitioner is not entitled to relief on his fourth claim.

## IV. Conclusion

For the reasons discussed, state court adjudication of petitioner's claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Nor did the state court adjudication result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This Court concludes that petitioner is not entitled to federal habeas relief on the claims contained in his petition.

In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. §

2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

This Court denies a certificate of appealability because reasonable jurists would not find this Court's assessment of the claims to be debatable or wrong. *See Slack v. McDaniel*, 529 U.S. at 484.

Although this Court will deny a certificate of appealability to petitioner, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is a lower standard than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002)(citing *United States v. Youngblood*, 116 F.3d 1113, 1115 (5th Cir. 1997)). Whereas a certificate of appealability may only be granted if

petitioner makes a substantial showing of the denial of a constitutional right, a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R. App. 24(a). "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765. Although jurists of reason would not debate this Court's resolution of petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed *in forma pauperis* on appeal. *Id.*

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that:

(1) the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

(2) A certificate of appealability is **DENIED.**

(3) Petitioner will be granted leave to appeal *in forma pauperis.*

<u>s/Denise Page Hood</u>
DENISE PAGE HOOD
CHIEF UNITED STATES DISTRICT JUDGE

Dated: November 27, 2019